[No. 59026-0-I.   Division One.   October 22, 2007.]

CURTIS INGRAM, *Appellant*, v. CRAIG THOMPSON ET AL., *Respondents*.

---

*Zachary L. Fleet*, for appellant.

*Robert C. Levin* (of *Mitchell Lang & Smith*); and *John C. Moore* (of *Moore Law Group, PC*), for respondents.

¶1 BECKER, J. — The trial court capped a plaintiff's potential recovery in a personal injury suit at $5,000, the figure the plaintiff put down on a bankruptcy schedule as an estimate of the claim's value. Capping the damages was an improper application of judicial estoppel. When a debtor

discloses an unliquidated claim in bankruptcy as an asset of unknown value and the bankruptcy court allows the debtor to keep the claim, the debtor is not taking a clearly inconsistent position when he seeks a maximum recovery.

¶2 Curtis Ingram and Craig Thompson were involved in a car accident on July 27, 2002. At the time of the accident, Thompson was driving a truck owned by Youngman Trucking. Ingram sustained some injuries in the accident but did not take immediate legal action against Thompson.

¶3 Some two years later, Ingram filed for a chapter 7 bankruptcy. He had to estimate the value of all personal property he owned on the bankruptcy forms. Specifically, Ingram was asked to list an estimated value for contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Ingram listed his claim against Thompson as a personal injury lawsuit, "value unknown, but believed to be less than $5,000.00."[1] He provided the name and telephone number of the attorney who was handling the claim. The bankruptcy trustee did not pursue the claim. The court discharged Ingram's debts on February 11, 2005.

¶4 Ingram filed the personal injury lawsuit against Thompson and Youngman Trucking on June 24, 2005. The defendants requested a statement of damages and Ingram responded with an itemized statement totaling almost $150,000:

SPECIAL DAMAGES:

| | |
|---|---|
| Car: | $3,000.00 |
| Lost work at Hostess: | $3,200.00 (one month subject to reduction by Disability payment of $534.30) |
| Lost work at Grocery Outlet: | $37,000.00 (unable to return to work) |
| Jeffrey Harris, PT: | $1,416.03 |
| Jennifer Lesko, PT: | $133.00 |
| Cynthia Campbell, PT: | $732.00 |

---

[1] Clerk's Papers at 20 (Voluntary Bankruptcy Pet., Oct. 26, 2004).

| | |
|---|---|
| Dr. Jane Baird: | $168.00 |
| Labcorp: | $31.00 |
| Dr. Bonnie Witrak: | $490.00 |
| Emergency Room Visit: | Amount unknown at this time. |

GENERAL DAMAGES:

Pain and suffering: Fair compensation in the nature of general damages for plaintiff Curtis Ingram's injuries will be left to the collective judgment of the jury . . . . the undersigned attorney for plaintiffs state that they believe juries in similar cases have valued these kinds of injuries in excess of $100,000.00.[2]

¶5 Thompson filed a motion for partial summary judgment, asking the court to cap the amount of damages recoverable at $5,000, the figure that Ingram had provided in bankruptcy as an estimate of the value of the claim. Thompson argued that Ingram's differing valuations violated the principle of judicial estoppel:

Plaintiff should not be permitted to gain the advantage of ascribing a relatively low value to this personal injury claim in order to avoid debts in the bankruptcy proceeding and then, after being discharged of his debts by the bankruptcy court, pursue this action by seeking upwards of thirty times the value stated in his sworn bankruptcy submissions.[3]

¶6 The trial court granted Thompson's motion to cap damages at $5,000, and Thompson moved for entry of judgment in that amount. The court granted that motion also. The court awarded attorney fees of $11,097.50 to Thompson as a prevailing party under RCW 4.84.250 and 4.84.270.

¶7 Ingram appeals. He contends that the trial court erred in applying judicial estoppel to cap his damages.

■■ ¶8 "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position in a court proceeding and later seeking an

---

[2] Clerk's Papers at 33 (Statement of Damages, May 11, 2006).

[3] Clerk's Papers at 9 (Defs.' Mot. for Summ. J., May 19, 2006).

advantage by taking a clearly inconsistent position." *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 224-25, 108 P.3d 147 (2005). A lower court's application of the doctrine of judicial estoppel is reviewed for abuse of discretion.

¶9 It is well established that judicial estoppel may apply to parties who accrue legal claims, file for bankruptcy, fail to list the claims among their assets, and then attempt to pursue the claims after the bankruptcy discharge. *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98-99, 138 P.3d 1103 (2006). " 'The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding.' " *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). "By not disclosing the asset, the debtor keeps an asset that may have created a dividend for the debtor's unsecured creditors." *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 909, 28 P.3d 832 (2001).

¶10 Thompson claims that undervaluing an asset on the bankruptcy schedule is equivalent to failing to list the asset because in both situations the debtor has represented that his assets are less than what he later claims. But all of the cases that Thompson relies on to support this argument involve a complete failure to list the claim. *Cunningham*, 126 Wn. App. at 224-25 (lawsuit dismissed based on judicial estoppel where debtor commenced an action for workplace injury he had known about but not disclosed during bankruptcy); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) (plaintiff judicially estopped from pursuing a claim not disclosed on his bankruptcy schedule).

¶11 There is a substantial difference between nondisclosure and a disclosure undervaluing an asset, as demonstrated by *Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001). Cusano had been a member of the popular early-80s rock band, KISS. He filed for chapter 11 bankruptcy and on the

schedule for personal property he listed "songrights" in songs written while he was in the band. He listed their value as "unknown." *Cusano*, 264 F.3d at 946. Cusano's plan was confirmed in 1990 and he was released from bankruptcy in 1993. Cusano filed a lawsuit four years later against former band members and record labels, alleging fraud, conversion, and an assortment of torts relating to unpaid royalties and illegal use of songs he co-authored. The district court found that Cusano had failed to schedule his claims for royalties and that the "songrights" asset he did schedule was "vastly undervalued." *Cusano*, 264 F.3d at 943. The court dismissed the claim relating to songrights on summary judgment.

¶12  On appeal, the Ninth Circuit concluded that Cusano did not forfeit the right to pursue his lawsuit by listing its value as unknown on his bankruptcy schedule. The debtor is required to be as particular as is reasonable under the circumstances; there are no bright-line rules. *Cusano*, 264 F.3d at 946. If possible, Cusano was to list the approximate dollar amount; if faced with a range of values, he was to choose a value in the middle of the range. There are assets, however, the value of which is unknown; when that is the case, " 'a simple statement to that effect' " will suffice. *Cusano*, 264 F.3d at 946 (quoting *In re Wenande*, 107 B.R. 770, 772 (Bankr. D. Wyo. 1989)). Applying these principles, the court concluded that Cusano's listing was not so defective that it would forestall a proper investigation of the asset:

> Although it would have been more helpful for Cusano to break down the description further so that it named songs, albums, and dates of and parties to royalty and copyright agreements, the additional detail would not have revealed anything that was otherwise concealed by the description as it was, *which provided inquiry notice to affected parties to seek further detail if they required it.* Any undervaluation of the "songrights" asset does not impair Cusano's interest in it, because only an express order of revocation after reopening of the bankruptcy case would do so, and that did not occur.

*Cusano*, 264 F.3d at 946-47 (emphasis added).

¶13 "While the doctrine of judicial estoppel serves the important purpose of preventing manipulative parties from prevailing twice on opposite theories in certain circumstances, it may not be used to hamstring a litigant from advancing a particular position when this position is not clearly inconsistent with a prior position." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 528 (7th Cir. 1999).

¶14 Ingram listed the value of his claim as "unknown, but believed to be less than $5,000.00." Under *Cusano*, this was sufficient to put both the bankruptcy trustee and creditors on inquiry notice. The bankruptcy trustee had the opportunity to inquire into the claim to decide whether the potential benefit to the creditors was worth the cost of litigating it.

¶15 Valuation of a personal injury claim is highly speculative as it must take into consideration not only damages but also liability, causation, and comparative fault. The net value to the plaintiff may depend upon subrogation issues, how the evidence comes in, and the credibility of the witnesses.

¶16 Given the uncertainty inherent in valuation of the claim and the fact that Ingram properly disclosed its existence, he did not take clearly inconsistent positions. The bankruptcy court allowed him to retain the claim as a personal asset and as a result he is now free to make out of it whatever he can. We conclude the trial court abused its discretion in applying judicial estoppel to limit Ingram's recovery.

¶17 The judgment is reversed. The award of attorney's fees is reversed. The case is remanded for trial.

APPELWICK, C.J., and SCHINDLER, J., concur.