# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| COREY HARRIS AND JULINE HARRIS, | ) ) ) | No. 71649-2-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| MICHAEL FORTIN, | ) ) ) | |
| Respondent. | ) ) | FILED: September 8, 2014 |

TRICKEY, J. — The doctrine of judicial estoppel prevents a party from asserting a particular position in a judicial proceeding and later taking a clearly inconsistent position in order to gain an advantage. Here, throughout their bankruptcy proceedings, appellants maintained that a promissory note, on which respondent agreed to pay them a principal amount of $400,000.00, had no value and was uncollectable. Less than a year later, appellants sued respondent in state court to recover the amount owed on that same promissory note. Under these circumstances, the trial court did not abuse its discretion in finding the appellants judicially estopped from pursuing the action. We affirm.

## FACTS

On April 26, 2010, Corey and Juline Harris (collectively Harris) filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code.[1] Harris submitted schedules detailing Harris's assets and liabilities. On Schedule B, Harris listed a promissory note as an "[u]ncollectible promissory note from Michael A. Fortin ($400,000[.00]])" with a "current value" of "0.00."[2] The promissory note referenced is

---

[1] Clerk's Papers (CP) at 142.
[2] CP at 164.

dated April 1, 2006.[3] Harris testified under oath that Fortin was insolvent and the debt was uncollectible.[4] The bankruptcy trustee found no available property for distribution. On December 3, 2010, the bankruptcy court discharged Harris's debts.[5]

Approximately nine months later, in September 2011, Harris brought the current state court lawsuit against Fortin to collect on the promissory note previously designated as having a zero value.[6] Harris sought damages in the amount of $956,000.00 under alleged claims of breach of contract, fraud, or negligent misrepresentation.[7] Harris alternatively sought relief in the amount of $400,000.00 under theories of conversion and rescission.[8]

On January 26, 2012, Harris filed an amended schedule with the bankruptcy court, still listing the promissory note as uncollectible with no value.[9]

In the state court action, Fortin moved for summary judgment, claiming Harris was judicially estopped from suing on the promissory note.[10] Fortin maintained that although Harris listed the promissory note in his bankruptcy schedules, Harris affirmatively represented to the bankruptcy court, the bankruptcy trustee, and the creditors that the note was uncollectible and had no value.[11] As a result, Fortin argued that the trustee took no action to pursue recovery of the debt on behalf of the creditors.[12]

---

[3] CP at 9.
[4] CP at 211, 220-21, 224-25.
[5] CP at 176.
[6] CP at 2.
[7] CP at 7.
[8] CP at 8.
[9] CP at 165, 170.
[10] CP at 133-141.
[11] CP at 133-34.
[12] CP at 134.

On February 28, 2013, the trial court granted Fortin's motion for summary judgment and dismissed the action.[13] Harris appeals.

ANALYSIS

Harris contends that the trial court erroneously dismissed the state court action on the ground of judicial estoppel. He argues that he did not take inconsistent positions because he disclosed the promissory note to the bankruptcy court, but the trustee nevertheless decided not to pursue the claim and abandoned the asset. Fortin responds that Harris asserted inconsistent positions because he claimed the promissory note had zero value and was uncollectible, but subsequently sued in state court to recover on the note. We hold that Harris took clearly inconsistent positions, and that doing so misled the bankruptcy court and would allow him to gain an unfair advantage. Accordingly, the trial court properly applied the equitable doctrine of judicial estoppel.

*Equitable Doctrine*

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). One of the purposes of the doctrine is to protect the integrity of the judicial process. New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). It also "seeks . . . "'to avoid inconsistency, duplicity, and . . . waste of time.""" Arkison, 160 Wn.2d at 538 (quoting Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App.

---

[13] CP at 294-96.

222, 225, 108 P.3d 145 (2005) (second alteration in original) (quoting Johnson v. Si-Cor, Inc., 107 Wn. App. 902, 906, 28 P.3d 832 (2001)).

## Standard of Review

Judicial estoppel applies to both questions of fact and law. Kellar v. Estate of Kellar, 172 Wn. App. 562, 579-80 n.3, 291 P.3d 906 (2012) (citing Anfinson v. FedEx Ground Package System, Inc., 174 Wn.2d 852, 865-66, 281 P.3d 289 (2012)), review denied, 178 Wn.2d 1025 (2013). The parties agreed at oral argument that no facts are in dispute. We review a trial court's decision regarding the application of judicial estoppel for an abuse of discretion. Miller v. Campbell, 164 Wn.2d 529, 536, 192 P.3d 352 (2008). A trial court abuses its discretion when it bases its decision on untenable or unreasonable grounds. Anfinson, 174 Wn.2d at 860.

We also apply the abuse of discretion standard when we review a summary judgment where the moving party invoked the doctrine of judicial estoppel to persuade a court to bar a claim based on a clearly inconsistent position taken in a prior proceeding. To defeat summary judgment, the nonmoving party must present evidence to rebut the determination of clearly inconsistent positions and establish that application of the doctrine of judicial estoppel would be an abuse of discretion. Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 634 (9th Cir. 2007) (concluding that the evidence "fail[ed] to rebut the determination of clear inconsistency," and therefore the application of the doctrine of judicial estoppel was not an abuse of discretion).

## Core Factors

In Arkison, our Supreme Court outlined three "core factors" to guide a trial court's application of judicial estoppel:

(1) [W]hether "a party's later position" is "clearly inconsistent with its earlier position"; (2) whether "judicial acceptance of that inconsistent position in a later proceeding would create the perception that either the first or second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or imposes an unfair detriment on the opposing party if not estopped."[14]

160 Wn.2d at 538-39 (internal quotation marks omitted) (quoting New Hampshire, 532 U.S. at 750-51).

Our analysis begins with the first factor: whether a party's subsequent position is "clearly inconsistent" with a previous position. Arkison, 160 Wn.2d at 538. Generally, cases that have analyzed this factor in a similar procedural setting are divided into two factual scenarios. The first involves the nondisclosure of a claim as an asset in bankruptcy proceedings. In such cases, the initial position asserted is complete nondisclosure of an asset to the bankruptcy court, and the "clearly inconsistent" position is pursuing recovery of that asset in another court proceeding. See, e.g., McFarling v. Evaneski, 141 Wn. App. 400, 404, 171 P.3d 497 (2007); Skinner v. Holgate, 141 Wn. App. 840, 848, 173 P.3d 300 (2007); Cunningham, 126 Wn. App. at 230.

In the second scenario, a party discloses an asset in bankruptcy court, but undervalues that asset. The party's initial position in that scenario is not "clearly inconsistent" with the party's later position, in which the party seeks to recover a higher sum than that previously designated in bankruptcy court. See Ingram v. Thompson, 141 Wn. App. 287, 288, 169 P.3d 832 (2007). In Ingram, the debtor filed a petition for bankruptcy under chapter 7, after he was involved in a car accident. 141 Wn. App. at 288-89. On the schedule of assets, the debtor listed the personal injury claim, but

---

[14] These core factors are not exhaustive; the court may consider additional factors in reaching its determination. Arkison, 160 Wn.2d at 538-39.

described it as having "value unknown, but believed to be less than $5,000.00." Ingram, 141 Wn. App. at 289. After obtaining a discharge in bankruptcy, the debtor filed a personal injury lawsuit seeking substantially greater damages. Ingram, 141 Wn. App. at 289.

We concluded, in part, that the debtor did not take "clearly inconsistent positions" because "[v]aluation of a personal injury claim is highly speculative," and because the debtor disclosed the claim in bankruptcy court. Ingram, 141 Wn. App. at 293.

In Ingram, we relied on Cusano v. Klein, a case in which the debtor in a chapter 11 bankruptcy proceeding listed song rights with an unknown value. 264 F.3d 936, 945-46 (9th Cir. 2001). The Cusano court noted that although it would have been helpful for the debtor to name songs, albums, and copyright agreements, the debtor did not conceal the asset, which would have been available to anyone who received the inquiry notice. Cusano, 264 F.3d at 946-47.

This appeal presents a third scenario of the "clearly inconsistent" factor. Harris disclosed the promissory note on his bankruptcy schedules, but affirmatively represented to the court that it had no value. At the bankruptcy meeting of creditors, the following exchange occurred:

> Court [trustee]: No I understand. All right. Now let's talk about – do any of the people that you listed on Schedule B18 as owing you money, is there any possibility that you're going to – you or anybody else is ever going to see this money?
>
> [Harris]: I would have to say no, otherwise I would have pursued it.[15]

Harris further responded, "Well I – I know both of the people so I know their situation and what they have and – you know – they're – the ability to collect on that debt was just never

---

[15] CP at 220-21.

there so —."[16] And when specifically asked about Michael Fortin and whether he was "good for it," Harris responded, "In my opinion, no. Michael Forteen [sic] is a consultant who used to actually work for me. And he's been unemployed for — I think — two years."[17]

Unlike the debtor in Ingram, Harris did not state that the amount recoverable was unknown. Rather, he affirmatively told the court that the promissory note had no value and that he personally knew that Fortin was not able to pay the debt owed on the note. Yet, less than a year after the discharge in bankruptcy, Harris filed an action to collect that same debt. Even after bringing the state court action, he continued to list the note as uncollectable and with no value.

In opposing the summary judgment motion, Harris, the nonmoving party, offered no evidence to rebut the determination of "clear inconsistency." We conclude that Harris took a "clearly inconsistent" position and, thus, the first factor is met.

We turn now to the second core factor: whether judicial acceptance of the inconsistent position in the subsequent proceeding creates a perception that either the first or second court was misled. Arkison, 160 Wn.2d at 538-39. Because Harris's bankruptcy was closed as a no asset case, the bankruptcy court implicitly accepted Harris's position as asserted throughout the bankruptcy proceeding. See Cunningham, 126 Wn. App. at 231. Harris's inconsistent position created a perception that misled the bankruptcy court. Thus, the second core factor is satisfied.

Finally, we consider the third factor: whether, if not judicially estopped from asserting the inconsistent position, Harris would gain an unfair advantage or impose an unfair detriment on Fortin. Arkison, 160 Wn.2d at 538-39. We conclude that this factor is

---

[16] CP at 221.
[17] CP at 224-25.

met. Harris would reap a benefit by retaining the asset that otherwise would have been discharged in bankruptcy.

We find that all three core factors are met. Harris is precluded in state court from asserting an inconsistent position from that taken in bankruptcy court. The trial court did not err in applying judicial estoppel and dismissing the action.[18]

### Attorney Fees

The trial court awarded Fortin attorney fees pursuant to the provisions contained in the promissory note. Harris does not dispute the reasonableness of those fees. Under the attorney fees statute, RCW 4.84.330, the prevailing party in an action to enforce or defend a contract is entitled to attorney fees and costs on appeal where the contract so provides. Reeves v. McClain, 56 Wn. App. 301, 311, 783 P.2d 606 (1989).

Accordingly, we affirm the trial court's dismissal and award of attorney fees, and award Fortin attorney fees on appeal.

Trickey, J

WE CONCUR:

---

[18] Harris contends, in part, that the asset was abandoned under 11 U.S.C. § 554(c). We find this claim irrelevant; it does not alter our view that the positions taken in both proceedings are inconsistent with one another.

8