# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LINDSAY HAYES and MATT ROSSTON, husband and wife; JAMES W. BEASLEY II; and all others similarly situated,

        Appellants,

v.

USAA CASUALTY INSURANCE COMPANY, a foreign insurance company doing business in the State of Washington; UNITED SERVICES AUTOMOBILE ASSOCIATION, a foreign intrainsurance exchange doing business in the State of Washington; USAA GENERAL INDEMNITY COMPANY, a foreign insurance company doing business in the State of Washington; GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign insurance company doing business in the State of Washington; JOHN DOES I-XX,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 70735-3-I

UNPUBLISHED OPINION

FILED: February 17, 2015

DWYER, J. — The appellants in this insurance coverage dispute filed suit in King County Superior Court on their own behalf and on behalf of all persons similarly situated within the State of Washington. After the respondents removed the case to federal court, the appellants, by representing to the federal court that the scope of their claims were narrower than as characterized by the respondents, secured a remand to King County Superior Court. Yet, when the

appellants returned to state court, it became clear that they had whittled their claims down to a point where the alleged misbehavior of the respondents no longer fell within the ambit of their claims, as reformulated. Recognizing their predicament, the appellants attempted to retreat from their federal court position; however, the trial court invoked the doctrine of judicial estoppel and rebuffed their attempt. We conclude, as did the trial court, that the appellants were not entitled to vary their claims according to the exigencies of the moment. Therefore, we affirm.

I

On May 16, 2012, Lindsay Hayes, Matt Rosston, and James Beasley II (collectively Insureds) filed suit in King County Superior Court on behalf of themselves and on behalf of all persons similarly situated within the State of Washington. Named as defendants were United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, and Garrison Property and Casualty Insurance (collectively Companies).

The Insureds alleged that the Companies had improperly denied their claims for reimbursement of medical expenses submitted under their first-party medical benefits coverage. Among the methods of denying insurance claims challenged by the Insureds were those involving "computer-generated reductions" and "human-generated reductions."

With regard to computer-generated reductions, the Insureds challenged the Companies' medical bill audit system, which was facilitated, in part, by a

third-party vendor called Auto Injury Solutions (AIS). The Insureds alleged that the Companies utilize "an undisclosed cost containment scheme which wrongfully deprives their insureds . . . of insurance benefits for medical treatment." The Insureds alleged that after they suffered injuries, their "medical treatment was then wrongfully denied by USAA on the basis of fraudulent file reviews." These allegedly fraudulent file reviews, the Insureds averred, were a result of a computer program employed by AIS, which was responsible for "denial of medical payment benefits . . . in situation[s] where a deviation exists in the insured's medical records from what USAA or its agents, or the computer system employed by USAA or its agents, interprets as 'appropriate' medical and/or billing documentation."

As to human-generated reductions, the Insureds challenged the alleged practice of using "sham" peer reviews of medical records, which were purportedly conducted by healthcare professionals retained by AIS, in order to determine whether the treatment received was medically necessary.

The Insureds pleaded the following six "causes of action:" (1) unjust enrichment, (2) breach of contract, (3) breach of covenant of good faith and fair dealing, (4) injunctive and declaratory relief, (5) violation of the Washington Consumer Protection Act (CPA),[1] and (6) violation of the Insurance Fair Conduct Act (IFCA).[2]

The Insureds claimed that they had suffered "damages in the form of

---

[1] Chapter 19.86 RCW.
[2] Chapter 48.30 RCW.

economic loss for underpayment of PIP[3] and/or medpay claims, out of pocket expenses, loss of benefit of the insurance policies purchased from USAA and the full benefit of the premiums paid." Yet, they expressly capped the amount of damages to which they believed they were entitled, stating, "the total amount in controversy in this action is believed to be less than $5 million."

On June 19, 2012, the Companies removed the case to federal court. United States District Court Judge James Robart was assigned the case. The basis for removal was the Class Action Fairness Act of 2005 (CAFA),[4] which requires, in pertinent part, an amount in controversy that exceeds $5 million. 28 U.S.C. § 1332(d)(2).

In removing the case to federal court, the Companies contended that the Insureds' claims involved the following two practices:

> In their Complaint, Plaintiffs allege two disputed practices. The first is that USAA fails to pay PIP claims based on a lack of adequate documentation. . . .
>
> The second disputed practice in the Complaint is that USAA uses a medical review by a third-party health care provider or professional to deny payment of reasonable and necessary medical expenses based on the treatment either not being related to the covered accident and/or the treatment not being necessary.

Fed. Doc. 45 at 7.

On September 13, the Insureds moved to remand the case back to King County Superior Court. They argued that the Companies had failed to meet their burden of proving that CAFA's amount in controversy requirement was satisfied.

---

[3] PIP is an acronym of "personal injury protection."
[4] Pub. L. No. 109-2, 119 Stat. 4 (2005).

Fed. Doc. 41 at 2. The Insureds averred that the Companies, in calculating the alleged amount in controversy, had mischaracterized their claims. According to the Insureds, although they "allege[d] two types of unfair practices, <u>both</u> are defined by the fact that they only exist because a <u>computer</u> generated a reduction for 'inadequate documentation' without human involvement."

With regard to the issue of "inadequate documentation," counsel for the Insureds informed Judge Robart that, in considering their motion to remand, he "should look at 'DOC'" Reason Codes,[5] but "should not look," for instance, at "NR" Reason Codes "because . . . the complaint doesn't speak to nurse reviews." Counsel for the Insureds added, "The only category of the ones that he actually mentioned might be physician review, which is PR. But even there it's overinclusive. It's total reductions when there's been any type of physician review. *That's not our complaint. We're not complaining about any type of physician review.*" (Emphasis added.) In effect, the Insureds represented to Judge Robart that their claims were based on denials of coverage that corresponded to "DOC Reason Codes." The significance of this representation, which is explained in more detail below, is that DOC Reason Codes correspond to denials in which documentation is missing—as opposed to being present but inadequate to substantiate the necessity of treatment.

The Insureds also maintained that the amount in controversy had been overstated. They argued that the amount in controversy estimated by the

---

[5] "Reason Codes" are certain combinations of letters and numbers that correspond to particular justifications for denying reimbursement of healthcare charges; for instance, missing documentation.

Insureds was "not a reliable statement of the amount of class damages because it is not the amount in fact paid by the class members and overstates the potential debt owed by class members to providers because it includes reductions that were written off by providers." Fed. Doc. 41 at 2. The Insureds explained that providers may write off unreimbursed charges, and that the insurer may pay a bill when the providers threaten to "balance bill"[6] the insured. Therefore, they alleged, the measure of actual damages that could be awarded pursuant to the CPA was properly calculated by determining "the amount that the class member insured actually paid providers." Fed. Doc. 50 at 6.

Judge Robart granted the Insureds' motion to remand. He concluded that the Companies had failed to meet their burden of proof as to the amount in controversy requirement and, in doing so, found that the only reductions at issue were "those both generated by a computer and attributable to missing documentation." Order Granting Plaintiffs' Motion to Remand at 15 (hereinafter Remand Order). To illustrate his understanding of that which constituted "missing documentation," Judge Robart compared and contrasted two different "Reason Codes."

> To be more specific, the following reason code is an example of the conduct that *could* fall under the scope of reductions challenged by Plaintiffs in this action:

> DOC55:    In order to make a reimbursement decision, documentation is needed to support the

---

[6] "The common usage of the term 'balance billing' refers to when a patient is liable for the difference between the bill and the benefit determination of the insurer." Stewart Reifler, Challenging Medicare Part B Amount Determinations: The Transcendence of the Reasonable Charge, 37 N.Y.L. Sch. L. Rev. 383, 421 n.358 (1992).

> medical necessity for continued care or treatment. Documentation must include all records such as patient history, evaluations, test results, progress notes, prescriptions and treatment plans.
>
> . . . This reason code is clear that denial was based on the fact that adequate documentation was absent from the insurance claim form submitted by the primary healthcare provider. Here, on the other hand, is an example of reductions that Plaintiffs *do not* challenge:
>
> NR162:     Review of the submitted documentation does not substantiate the medical necessity for passive physical therapy in the absence of active physical therapy at this state in treatment.

Remand Order at 11 (emphasis added).

Based on these examples, Judge Robart determined that the Insureds' asserted claims were limited to those instances wherein adequate documentation was missing—contrasted with instances in which the submitted documentation failed to substantiate the necessity for the treatment provided.

> As opposed to DOC55, NR162 explains that denial was based on the fact that the documentation submitted by the primary healthcare provider did not substantiate the treatment provided. *Despite USAA's attempt to blur the lines between these two rationales for denial, they are in fact distinct.*

Remand Order at 12 (emphasis added) (footnote omitted).

Although he granted the Insureds' motion to remand, Judge Robart stated that, in the event that the Insureds adopted a contrary position in state court to that which they took in their motion to remand, the Companies could avail themselves of the equitable defense of judicial estoppel.

> With respect to USAA's fear that Plaintiffs are mischaracterizing their complaint in order to "leave open the possibility of seeking

more than the jurisdictional minimum in state court . . . ." (Resp. at 7), "[w]e acknowledge that strict construction of our jurisdiction creates the potential for manipulation of the jurisdictional rules by plaintiffs who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." Lowdermilk[ v. U.S. Bank Nat'l Ass'n], 479 F.3d [994,] 1002 [(9th Cir. 2007)] (internal citation and quotation marks omitted). Nevertheless, if Plaintiffs do indeed suddenly adopt a position contrary to the one raised in their motion, then USAA will certainly have at its disposal the defense of judicial estoppel: "Judicial estoppel precludes a party from gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position in a subsequent action." Johnson v. Si-Cor Inc., [107 Wn. App. 902,] 906, 28 P.3d 832, 834 (Wash. Ct. App. 2001).

Remand Order at 12 n.3.

In addition, Judge Robart explained that because "the reductions taken by USAA do not necessarily constitute actual damages," the Companies' calculation of the amount in controversy was suspect.

> As made clear in the record by several depositions of primary healthcare providers, when an insurance company does not pay an insurance claim in full, it is not necessarily the practice of primary healthcare providers to simply pass along the balance of the bill to its patients. . . . Sometimes, for example, the primary healthcare provider writes-off a portion of the bill. . . . *As such, just because USAA applies reductions to an insurance claim does not mean that a policyholder suffers actual monetary damages in an amount equivalent to the total of those reductions.*

Remand Order at 14 (emphasis added).

After the case was remanded to King County Superior Court, the Companies moved, on January 23, 2013, to dismiss all of the Insureds' claims pursuant to CR 12(b)(6).

On February 19, the Insureds moved to strike the motion to dismiss and

- 8 -

asked King County Superior Court Judge Mary Yu[7] to impose CR 11 sanctions.

On March 1, Judge Yu denied the Insureds' motion to strike, ruling that the court would decide the Companies' motion to dismiss on the merits.

On March 12, the Companies filed a reply in support of their motion to dismiss pursuant to CR 12(b)(6), wherein they stated that the Insureds had failed to file or serve a response in opposition to their motion to dismiss the complaint. That same day, the Insureds informed the court of their "inten[t] for the Court to rely on their motion to strike Defendants' motion to dismiss and their Reply on that motion."

On March 25, following a hearing on the motion to dismiss, Judge Yu granted the Companies' motion and dismissed all of the Insureds' claims. Her basis for granting the Companies' motion was a lack of contractual privity between the named plaintiffs and named defendants.

> The court grants the motion to dismiss on the basis that the named Plaintiffs do not have a contractual relationship with the named Defendants. Without an insurance policy that connects a specific Plaintiff to a specific Defendant, Plaintiff cannot assert a claim or liability pursuant to an insurance policy when there is no privity.

Two days later, on March 27, the Insureds moved for "clarification and/or reconsideration of court's order granting defendants' motion to dismiss."

An additional two days later, on March 29, the Insureds filed a "motion for reconsideration of court's order granting defendants' motion to dismiss claims

---

[7] Since her involvement in this matter, the Honorable Mary Yu was appointed and then elected to serve as a member of our Supreme Court. Nonetheless, in the interest of accuracy, we refer to her as Judge Yu throughout our opinion, given her role in presiding over this case in the superior court.

- 9 -

against defendants with whom plaintiffs have no contract."

Judge Yu denied the March 29 motion; however, she agreed to clarify or reconsider "the issue as to whether there is privity."

On May 13, Judge Yu entered an "order on motion for reconsideration/clarification." Therein, she explained that, as to the contract claims, she was dismissing only those claims brought against the two named defendants with whom none of the named plaintiffs had a contractual relationship.

> The court dismissed all contractual claims against any Defendant where there was no privity with any of the named Plaintiffs. The confusion lies in Plaintiffs' insistence on clustering alleged related insurance companies for purposes of finding a contractual relationship. The court rejects the argument and clarifies that the court is dismissing all contractual claims against the two named Defendants who have no contractual privity with any of the Plaintiffs. These two Defendants are USAA General Indemnity Company . . . and Garrison Property and Casualty Insurance Company.

Concerning the Insureds' CPA claims, Judge Yu stated, "the court will reconsider dismissal of the CPA claims if Plaintiffs can actually show injury to their business or property *caused by each Defendant against which they bring a CPA claim*." She stated that the court would allow the Insureds to note a motion to provide evidence that they could meet the elements of a CPA claim.

> So, the question this court still has for Plaintiffs is: what is the cognizable injury or damage? Did the Plaintiffs actually pay providers for any charges not paid by the insurer? Are there "out-of-pocket" expenses that Plaintiffs might not have incurred but for the alleged injury?

In the event, however, that the motion was not heard within 60 days,

- 10 -

Judge Yu ruled that the court would reinstate the dismissal of the CPA claims as against all of the Companies.

Judge Yu also clarified that the Insureds' claims of fraud and unjust enrichment, which had previously been dismissed, remained dismissed.

On June 17, the Insureds filed another motion for reconsideration, in which they sought an order that: "(1) Reinstates their CPA claims against USAA and USAA Casualty; (2) Clarifies that their individual and class claims against USAA and USAA Casualty for breach of contract, breach of good faith, declaratory and injunctive relief and violation of the Insurance Fair Conduct Act are not dismissed; and (3) clarifies that their class claims against USAA General and Garrison will be determined on their motion for class certification."

On July 12, Judge Yu denied the Insureds' third motion for reconsideration. Her order is quoted, in pertinent part, below.

> This court entered an order on May 13, 2013 upon Plaintiffs' Motion for Reconsideration/Clarification specifically advising Plaintiffs[] that the court would permit a showing of "injury" in order to save the CPA claims from final dismissal. The sole issue was whether Plaintiffs could show injury from Defendants' alleged practice of denying insurance claims based upon an automated or computer review. Non-payment of claims for other reasons are not part of this lawsuit.
>
> The court rejected Defendants' arguments that the claim was damages for personal injuries and accepted Plaintiffs' claim that their CPA claims were based upon an alleged practice of reviewing and denying insurance claims by a computer (without human review). The court afforded Plaintiffs with an additional opportunity to provide the court with such evidence of injury as a result of this practice, but Plaintiffs have not done so in their latest pleading and barrage of paper. Rather than focus on this narrow issue, Plaintiffs have instead opted to disregard the court's order and filed an untimely Motion for Reconsideration of the court's entire order

without asking leave to do so (See CR 59 setting a ten day timeline).

On August 6, the Insureds sought discretionary review in this court of the trial court's adverse rulings chronicled above.

In the meantime, the Companies had, on May 30, filed a motion for summary judgment pursuant to CR 56. Their basis for bringing the dispositive motion was that none of the claims submitted by the Insureds had been reduced or denied due to a "computer-generated reduction" based on "inadequate documentation." As to plaintiff-appellant Hayes, the Companies averred that none of the charges submitted under her PIP claim were denied or reduced based on "inadequate documentation," and none of the charges were denied or reduced with a corresponding DOC Reason Code. As to plaintiff-appellant Rosston, the Companies averred that he never submitted a PIP claim in his own right. As to plaintiff-appellant Beasley, the Companies averred that, although there was an instance of inadequate documentation in his PIP claim (along with a corresponding DOC55 Reason Code), it resulted not from an automatic, computer-generated determination but, rather, followed from a review with human involvement.

The Insureds disagreed with the manner in which their claims were described. They characterized their "actual claims" as involving an initial computer-generated "flagging" for non-payment followed by either automatic non-payment or non-payment based on a "sham" human review. Notably, however, the Insureds did not aver that any of the named plaintiffs had been denied

coverage based on a computer-generated reduction without human involvement.

On August 30, a hearing was held on the summary judgment motion. At the hearing, Judge Yu orally granted summary judgment in favor of the Companies and, in doing so, invoked the doctrine of judicial estoppel to block the Insureds' attempt to retreat from their representations made to the federal court.

> THE COURT: You know, I feel very familiar with this record. I can't tell you how many times I've gone back and have read the record, reviewed the record, tried to comprehend all of the pleadings that have been submitted, including what came from Judge Robart on a remand, and I am granting the summary judgment today.
> I go back even to my own order that was entered on July 12th of this past year and, for the second time, trying to also clearly indicate what was the scope of this particular case.
> I said it more than once. I asked about it each time, and then again even asserted it specifically, and the pleadings that came back always were different.
> It seemed to be a refinement, and it was an attempt to really be very clear about what this case was.
> I agree completely, frankly, with defense counsel's argument today in terms of what came back from Judge Robart, what the remand was, what my decisions have been, and what the pleadings have been, and it's consistently changed.
> And I do believe that—that plaintiffs should be estopped from continuously shifting what the case is about.
> I'm granting the motion. . . .
> MR. BRESKIN: Your Honor, may we ask, just to make clear for the record, it's the Court's belief that the claim is limited to a doc 55 then?
> Is that the Court's—because that's what they moved on was doc 55.
> THE COURT: It's not solely what they moved on. It really is the allegation that the denials are based on a computer-generated review.
> MR. BRESKIN: As opposed to a computer flagging; is that the Court—I mean—
> THE COURT: Computer flagging is not a denial. It simply shifts it into a whole 'nother review process. This flagging is a new way of looking at the same question.

On September 6, Judge Yu's ruling was memorialized in a written order.

The Insureds then converted their earlier motion for discretionary review into an appeal as a matter of right and filed a notice of appeal as to all adverse rulings entered by the trial court.

II

The Insureds contend that the trial court erred in granting summary judgment on their breach of contract claims. They maintain that this error was due to the trial court's "reformulation" of their claims. According to the Insureds, the "class claims" have the following characteristics: "(a) when the computer automatically denies payment *and* an EOR is then sent to the insured and provider *without* further review; and (b) when the computer automatically denies payment and a sham review follows." Appellants' Opening Br. at 28. Their "individual claims," the Insureds argue, "fall within a subset of the larger *class claims*"—namely, instances in which a computer automatically denies payment and a sham human review follows. Appellants' Opening Br. at 28. We disagree. As the trial court correctly ruled, the doctrine of judicial estoppel prevents the Insureds from reconstituting their claims.[8]

---

[8] On appeal, the Companies contend that the Insureds waived their right to argue that the trial court erred by "reformulating" their claims. This is so, the Companies assert, because "[the Insureds'] opening brief does not even mention the legal basis for Judge Yu's summary judgment decision—the doctrine of judicial estoppel—or the factual bases for that decision—[the Insureds'] repeated representations to the federal court regarding the scope of their claims, and the federal court's ruling on that issue." Br. of Resp'ts at 36.

It is true that the Insureds, in their opening brief, are less than forthcoming with regard to the trial court's invocation of judicial estoppel. Nonetheless, because they did argue at length that the trial court erred by "reformulating" their claims, it would be overly harsh for us to categorically refuse to consider the issue.

- 14 -

""'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'"" In re Estate of Hambleton, __ Wn.2d __, 335 P.3d 398, 414 n.5 (2014) (quoting Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012) (quoting Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007))). The doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000); accord Anfinson, 174 Wn.2d at 864 (citing Pegram). "There are two primary purposes behind the doctrine: preservation of respect for judicial proceedings and avoidance of inconsistency, duplicity, and waste of time." Anfinson, 174 Wn.2d at 861.

"Three factors guide judicial estoppel: '(1) whether "a party's later position" is "clearly inconsistent with its earlier position"; (2) whether "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'"" Hambleton,

---

In addition, the Companies moved to strike the Insureds' reply brief. Their reasons for doing so are similarly rooted in the failure of the Insureds to squarely address the issue of judicial estoppel in their opening merits brief. Although the Insureds did not squarely address judicial estoppel until their reply brief, they did present argument concerning the trial court's alleged "reformulation" of their claims. Given the Companies' emphasis on judicial estoppel in their responsive briefing, it was prudent for the Insureds to use their reply brief to address those arguments. Therefore, the Companies' motion to strike the Insureds' reply brief is denied.

335 P.3d at 414 n.5 (quoting Arkison, 160 Wn.2d at 538-39 (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001))).

A trial court's decision with respect to the application of judicial estoppel is reviewed for an abuse of discretion.[9] Arkison, 160 Wn.2d at 538. It is an abuse of discretion to render a decision or order that is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons. Anfinson, 174 Wn.2d at 860.

The doctrine of judicial estoppel was properly applied by the trial court. Aided by Judge Robart's foresight, Judge Yu was prepared for the possibility that the Insureds would attempt to reconstitute their claims in the wake of securing a remand to state court by confining their claims to those reductions that were generated by a computer and were attributable to missing documentation. When they did so, Judge Yu did well to hold the Insureds to their representations in federal court, which enabled them to secure a remand to their preferred forum.

In federal court, the Insureds characterized their breach of contract claims as being based on reductions that were generated by a computer and

---

[9] Summary judgment orders and all rulings made in conjunction with summary judgment are reviewed de novo. Kellar v. Estate of Kellar, 172 Wn. App. 562, 573, 291 P.3d 906 (2012), review denied, 178 Wn.2d 1025 (2013); Momah v. Bharti, 144 Wn. App. 731, 749, 182 P.3d 455 (2008). However, authority exists for the proposition that, when reviewing a trial court's application of judicial estoppel to bar a claim on summary judgment, the appropriate inquiry is whether the trial court abused its discretion. E.g. Harris v. Fortin, 183 Wn. App. 522, 526-27, 333 P.3d 556 (2014). No Washington appellate court has endeavored to explain how the abuse of discretion standard may be squared with the directive that rulings on summary judgment must be reviewed de novo. Yet, regardless of whether our review is de novo or for abuse of discretion, it is apparent that the trial court's ruling was proper. Because this determination may be made under either standard of review, we need not resolve the issue herein.

attributable to missing documentation. Then, in King County Superior Court, they took the clearly inconsistent position that their claims included reductions involving human reviews and attributable to documentation that failed to substantiate the necessity of the treatment. Had Judge Yu accepted this inconsistent position, it would have created the perception that Judge Robart, who envisioned the possibility that the Insureds would attempt to reconstitute their claims on remand, had been misled. Not only would this undermine respect for the judiciary, it would result in an unfair advantage to the Insureds by allowing them to avoid the proper, if undesired, adjudicative forum.

Nevertheless, both in the trial court and now on appeal, the Insureds maintain that their counsel's characterization of the class claims on their motion to remand could not limit the class claims that they could pursue in state court. In support of this, they cite to the United States Supreme Court's decision in Standard Fire Ins. Co. v. Knowles, __ U.S. __, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013). In Knowles, the Court held that putative members of a class action could not, by virtue of a named plaintiff's precertification stipulation as to the amount in controversy, have the value of their claims reduced, observing that a named plaintiff "cannot legally bind members of the proposed class before the class is certified." 133 S. Ct. at 1348-49. Knowles did not, however, supplant the established rule that named plaintiffs may structure the type of claims that they intend to bring on behalf of the putative class members. See, e.g., Lincoln Prop. Co. v. Roche, 546 U.S. 81, 91, 126 S. Ct. 606, 163 L. Ed. 2d. 415 (2005) ("In general, the plaintiff is the master of the complaint and has the option of naming

only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties'" (alteration in original) (quoting 16 J. Moore et al., MOORE'S FEDERAL PRACTICE § 107.14[2][c], p. 107–67 (3d ed. 2005))). As the masters of their own complaint, the Insureds were entitled to narrow the scope of the class claims in federal court. However, after exercising their prerogative, they were bound to act in accordance with their representations in subsequent phases of the case, including the proceedings in King County Superior Court.

Once the Insureds were judicially estopped from reconstituting their claims, summary adjudication was proper. The Insureds failed to present evidence—or even to allege—that the named plaintiffs had been denied coverage based on reductions generated by a computer and attributable to missing documentation. Therefore, there were no issues of fact in need of resolution, and the Companies were entitled to judgment as a matter of law. Accordingly, the trial court did not err in granting the Companies' CR 56 motion and dismissing the Insureds' remaining claims.[10]

III

The Insureds next contend that the trial court erred in dismissing their CPA claims. This is so, they maintain, because the court ignored the evidence they presented and failed to adhere to proper procedural rules. We disagree.

---

[10] The Insureds also assert that their "causes of action" for bad faith, declaratory relief, and violation of the IFCA, as well as their claims against the two named defendants with which none of the named plaintiffs had an insurance policy, were improperly dismissed. As with the dismissal of their breach of contract claims, the Insureds contend that the trial court improperly reformulated their claims. Because we conclude to the contrary, we decline to grant the Insureds the appellate relief they seek.

- 18 -

In her May 13, 2013 order, Judge Yu provided the Insureds with an opportunity to submit evidence that the named plaintiffs had suffered injury based on "an alleged practice of reviewing and denying insurance claims by a computer (without human review)." The Insureds argue that they complied with Judge Yu's order. They assert that they did so by "submitting undisputed evidence showing that their bills would have been paid under USAA's payment protocol *but for* the computer automatically flagging the bill for non-payment and the bill[] being 'auto moved' to a nurse or 'professional' for review." Appellants' Opening Br. at 15. In other words, the Insureds contend that they produced evidence of cognizable CPA injury as a result of the allegedly improper act of coverage being denied.

The Insureds' position is again belied by the doctrine of judicial estoppel. By arguing in federal court that the Companies could not show that the out-of-pocket expenses incurred by the Insureds satisfied CAFA's amount in controversy requirement, the Insureds secured a remand to their desired forum. Once they returned to state court, however, the Insureds were not entitled to change course by arguing that the injury they suffered stemmed from the allegedly improper act of coverage being denied, rather than as a result of out-of-pocket expenses they incurred by virtue of coverage being denied. Instead, it was incumbent upon them, given the position they took in federal court, to produce evidence of actual damages attributable to out-of-pocket expenses paid as a result of computer-generated reductions made without human involvement.

When they failed to do so, Judge Yu properly dismissed their CPA claims.[11]

Nevertheless, the Insureds argue that they should not have been required to produce evidence at the motion to dismiss stage and that, instead, the trial court should have considered only that which was pleaded in the complaint. Yet, the complaint did not include any allegations that the named plaintiffs had suffered injury in the form of out-pocket-expenses caused by computer-generated reductions made without human involvement. Thus, in effect, the Insureds challenge an act of largesse by the trial judge, who could have dismissed the Insureds' CPA claims for failure to state a claim but, rather, provided the Insureds with an opportunity to produce evidence of actual damages in the form of out-of-pocket expenses that were caused by computer-generated reductions made without human involvement. The trial court did not err. No appellate relief is warranted.

Affirmed.

We concur:

---

[11] While the Insureds correctly observe that, as a general matter, plaintiffs are not required to allege and produce evidence of actual damages in order for their CPA claims to survive both a CR 12 motion and a CR 56 motion, Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 204 P.3d 885 (2009), the Insureds' representations in federal court left them in a position where they were, in fact, required to show actual damages to prove their CPA claims in state court.