# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| V.S INVESTMENT ASSOC, LLC; JACOB STELMAKH; and LILIIA STELMAKH,<br><br>Appellants,<br><br>v.<br><br>LEVEL CAPITAL, LLC; HACKER & WILLIG, INC., P.S.,<br><br>Respondents,<br><br>LCRE HOLDINGS I, LLC; and JOHN & JANE DOES 1-10,<br><br>Defendants. | No. 87441-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Under CR 12(b)(6), the trial court dismissed V.S Investment Assoc LLC's (VS Investment) and Jacob and Liliia Stelmakhs' (the Stelmakhs) second amended complaint against their creditor, Level Capital LLC, for failure to state a claim. VS Investment and the Stelmakhs (collectively VS) assert the trial court erred in dismissing its second amended complaint. VS also argues the trial court should have granted VS leave to amend for the third and fourth amended complaints it filed. Lastly, VS asserts the trial court erred in overruling VS's motion to strike documents outside the pleadings, denying reconsideration, and awarding attorney fees to Level.

We reverse and remand the trial court's dismissal of VS's breach of contract and Consumer Protection Act (CPA), ch. 19.86 RCW, claims against Level and the order awarding attorney fees to Level Capital. Otherwise, we affirm.

I

Because we are reviewing a CR 12(b)(6) motion to dismiss for failure to state a claim, we accept the factual allegations contained in the second amended complaint, including attached documents, as true. Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 843-44, 347 P.3d 487 (2015).

A

In 2019, Level loaned VS Investment $3.35 million to construct 10 townhomes on a plot of land in Everett, Washington. Level provides residential construction financing services, and VS Investment has previously done business with Level on other projects. To secure the loan, VS Investment granted a deed of trust to Level[1] to the plot to be developed.

VS Investment sought to use loan funds to pay for the necessary permits and asked Level for disbursement. Level indicated the loan agreement did not allow the funds to pay for permits and denied VS Investment's request. According to VS, Level nonetheless agreed to modify the terms of the loan and maturity date so that VS Investment could pay for the permits, provided VS Investment pledged additional collateral.

In 2020, VS Investment and the Stelmakhs entered an "additional collateral agreement" with Level, wherein the Stelmakhs granted a deed of trust of their

---

[1] Level was formerly Cyan Funding.

home to Level.  The additional collateral agreement stated VS wanted Level to restructure the loans, extend the maturity date, and increase the total loan commitment.  The agreement also stated the Stelmakhs would benefit "as a result of financial accommodations" from Level to VS Investment.

On February 14, 2022, Level's counsel, Hacker & Willig Inc. (H&W), sent a notice of default on the loans to VS that indicated VS owed approximately $1.2 million.  Level appointed H&W to serve as its trustee and assigned its beneficial interest in the additional collateral deed of trust to the Stelmakhs' home to LCRE Holdings I LLC.

On December 9, 2022, H&W recorded a notice of trustee's sale to initiate foreclosure proceedings on the Stelmakhs' home.

B

On December 30, 2022, the Stelmakhs filed their first complaint against Level and LCRE.  The Stelmakhs argued Level would not release more funds for the construction project despite agreeing to disburse them and asserted four causes of action: accounting, lack of consideration/unjust enrichment, breach of contract, and injunctive relief to restrain any nonjudicial sale of rights relating to the residence.

On February 10, 2023, Level and LCRE moved to dismiss the Stelmakhs' complaint for failure to state a claim under CR 12(b)(6).  Level noted the motion to be heard on March 10, 2023.

On March 7, 2023, the Stelmakhs filed their first verified amended complaint.  The complaint listed VS Investment as a new plaintiff and added H&W

as a new defendant (hereinafter, the defendants are collectively referred to as Level). VS asserted new claims against Level: breach of contract; violations of the deeds of trust act (DTA), ch. 61.24 RCW; the Consumer Loan Act (CLA), ch. 31.04 RCW; Washington's usury law, ch. 19.52 RCW; home ownership equity protection act (HOEPA), 15 U.S.C. § 1602 and 12 C.F.R. § 1026; truth in lending act (TILA), 12 C.F.R. § 1026; the equal credit opportunity act (ECOA), 15 U.S.C. § 1691; and the CPA; unjust enrichment; declaratory relief and accounting; and a temporary restraining order and preliminary injunction under the DTA. To provide time for settlement negotiations, Level offered to continue the hearing on its motion to dismiss to April 7, 2023 and agreed to postpone the trustee's sale to April 14, 2023. This court's record does not indicate the motion was heard at any point.

On March 27, 2023, VS filed a second verified amended complaint repeating the same causes of action as the first amended complaint. VS did not seek leave of court or written consent of Level in compliance with CR 15(a). The next day, VS moved to enjoin Level from selling the Stelmakhs' home, which the court ultimately granted.

On May 10, 2023, VS filed a third verified amended complaint, retaining the same causes of action as the previous two amended complaints. On May 31, 2023, VS filed a fourth verified amended complaint, asking for additional injunctive relief under the CPA to restrain the sale of the Stelmakhs' home. VS did not seek leave of court or written consent of Level under CR 15(a) when filing these amendments.

On August 20, 2024, VS moved for default against Level, arguing Level failed to "file any responsive pleadings or otherwise properly defend against" VS's fourth verified complaint. Level objected, arguing VS had violated CR 15(a) by filing the second, third, and fourth amended complaints without leave of court or Level's written consent. Level then moved anew to dismiss VS's claims in its first amended verified complaint, arguing the time to file an amended complaint had closed because Level's CR 12(b)(6) motion was a "responsive pleading." Level noted this hearing for October 11, 2024.

On September 26, 2024, VS moved for the court to "definitive[ly] rul[e]" the fourth verified amended complaint was the operative complaint. On October 3, 2024, the court denied VS's motion, finding VS did not follow CR 15 procedure and seek leave for amended complaints one, two, three, and four.[2]

At the hearing on Level's motion to dismiss VS's first amended complaint on October 11, 2024, the court asked the parties to clarify the procedural posture. The court wanted the parties to address the effect of Level arguing against the preliminary injunction "based on the second amended complaint" but failing to raise an objection on which complaint was operative.

Level clarified its motion to dismiss was against the first amended complaint because the second amended complaint was invalid for not complying with CR 15 procedural requirements. VS argued Level waived objection to the second

---

[2] The court also found that "[r]esponsive pleadings were filed in December 2022, April '23, and May 2023." CR 7 illustrates responsive pleadings as answers to complaints, cross claims, and third-party complaints. Level filed none of these.

5

amended complaint because it argued the preliminary injunction based upon facts alleged in the second amended complaint.

The court denied Level's motion to dismiss VS's first amended complaint, finding Level argued "the injunction motion without raising objection to the Second Amended Complaint" and "waived any objection to that pleading." The court found VS's second amended complaint to be operative.

On October 18, 2024, Level moved to dismiss VS's second amended complaint. Relying on VS's bankruptcy proceeding disclosures, Level argued VS was judicially estopped because VS did not disclose its claims against Level. VS moved to strike the bankruptcy documents from the court's consideration of the motion to dismiss. The court dismissed VS's second amended complaint for failure to state a claim and denied VS's motion to strike matters outside the pleadings from Level's motion to dismiss.

After denial of reconsideration, VS appeals.[3]

II

VS argues the trial court erred in "not treating the Fourth Verified Amended Complaint as the operative complaint" and denying leave to amend.

A

We review a trial court's denial of a motion to amend a pleading under a " 'manifest abuse of discretion' " standard. Herron v. Trib. Publ'g Co., 108 Wn.2d 162, 165, 736 P.2d 249 (1987) (quoting Del Guzzi Constr. Co. v. Glob. Nw., Ltd., 105 Wn.2d 878, 888, 719 P.2d 120 (1986); Caruso v. Loc. Union 690 of Int'l Bhd.

---

[3] We deny Level's motion to strike VS's overlength brief under RAP 18.8(a).

of Teamsters, 100 Wn.2d 343, 351, 670 P.2d 240 (1983)). "The trial court's decision 'will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

CR 7(a) establishes the pleadings that are permitted, one of which is a complaint, and states that "[n]o other pleading shall be allowed" except for certain pleadings that may be permitted by court order. Whether an existing complaint may be amended is controlled by CR 15. A plaintiff may amend a complaint "once" as a matter of course before a responsive pleading is served. CR 15(a). Thereafter, avenues to amend a complaint include leave of court or written consent of the adverse party under CR 15(a) or amendments to conform to the evidence under CR 15(b). CR 15(b) expressly allows the court to recognize amendment by "express or *implied* consent" of the adverse party, but only as to issues "tried" by consent. CR 15(b) (emphasis added).

VS acknowledged at the October 11, 2024 hearing that it did not comply with CR 15(a). Nonetheless, it argues the superior court should have ruled Level had impliedly waived any challenge to the third and fourth amended complaints by defending the case without objecting to VS's noncompliance with CR 15.

Embracing VS's theory of waiver would undermine CR 15 in two respects. First, if the court were to imply Level's consent to VS's unauthorized amendments, the court would effectively read out of the rule its requirement that an adverse party

provide "written" consent to amendment before trial. CR 15(a); see Raab v. NU Skin Enters., Inc. 4 Wn.3d 464, 477-78, 565 P.3d 895 (2025) (rejecting the argument that CR 12(b)(3) dismissal where "venue" is "improper" should be granted to enforce a valid contractual forum-selection clause because it would be "so clearly inconsistent with the plain language of CR 12(b)(3)").

Second, allowing amendment by implied consent before trial would likewise undermine the requirement that amendments to conform to the evidence after trial be based on the parties' having "tried" an issue by consent. CR 15(b). CR 15(a) provides a means for a party to amend based on the adverse party's consent, but only if their consent is in writing, or based on a trial by consent. In other words, by including implied consent in CR 15(b) and explicit written consent in CR 15(a), CR 15(a) does not allow pleadings to be amended by implied consent before trial. VS's position would render these limitations superfluous.[4]

Here, VS filing its pleadings without leave of court or written consent of the adverse party is less akin to a defendant waiving a defense through litigation conduct and more akin to papers submitted in violation of court rules. At least for

---

[4] VS directs us to Harel v. Rutgers, to support the proposition amended pleadings may be filed without leave of court and become operative. 5 F. Supp. 2d 246 (D.N.J. 1998), aff'd, 191 F.3d 444 (3rd Cir. 1999). There, the plaintiff filed an amended complaint without leave, adding a Title VII claim within the required 90-day period from first learning of his right to sue. Id. at 260. The court excused the plaintiff's failure to obtain leave of court because the defendant failed to timely raise a challenge to it and because the defendants had notice that the plaintiff might eventually bring a Title VII claim. Id. at 260-61. To the extent Harel suggests that the adverse party's consent may be implied, it is unpersuasive where the operative court rule expressly requires written consent. But Harel is also distinguishable. There, the defendant had actual notice of the anticipated claim. Here, the plaintiffs' serial filings in violation of the rules obscured the clarity of notice of their claims that the civil rules are designed to promote.

late-submitted papers, a violator is required to "carry the burden of obtaining leave of court" to present its out-of-compliance papers. Zurich Servs. Corp. v. Gene Mace Constr., LLC, 26 Wn. App. 2d 10, 34, 526 P.3d 46 (2023) (citing Boyer v. Morimoto, 10 Wn. App. 2d 506, 537, 449 P.3d 285 (2019)). Where VS never followed the requirements of CR 15 to amend its pleadings, and never obtained permission from the court for its deviation from the court rules, its unilaterally filed pleadings amendments were not properly before the court, and were properly stricken.

Treating CR 15 as the comprehensive and exclusive means to amend the pleadings counsels against recognizing new avenues to plead issues before the court in matters governed by the civil rules. VS directs us to two cases to support the proposition that, by litigating the case, a party waives objection to an amended pleading filed without following CR 15. See Lybbert v. Grant County, 141 Wn.2d 29, 41-42, 1 P.3d 1124 (2000) (concluding the county waived affirmative defense of improper service when it did not engage in discovery of facts to support improper service defense and had let the statute of limitations of the defense run before asserting the defense); King v. Snohomish County, 146 Wn.2d 420, 424-25, 47 P.3d 563 (2002) (concluding the county waived its affirmative claim filing defense raised in its answer by failing to address it in interrogatories, argued summary judgment on grounds separate from its defense, and waited nearly four years to bring up the defense again).

But even if the analysis of King and Lybbert applied, we would reach the same result. VS points to nothing more than the passage of time between its

second amended complaint, which the superior court treated as operative, and its third and fourth amended complaints. VS does not indicate that it changed its own position in any way reliant on the lack of earlier objection to the third or fourth amended complaints. In addition, Level routinely filed motions to dismiss VS's initial, first, and second complaints and noted hearings.[5] Level objected to VS's motion for default on the defense that VS moved for default on an improperly pleaded fourth verified complaint. Level did not engage in discovery other than to move for a protective order because it felt the proposed interrogatories were too broad. VS does not explain that discovery or other litigation occurred particularly in reliance on the third or fourth amended complaints such that, as in King and Lybbert, allowing the relatively late objection would mean that earlier proceedings would be rendered a waste in contravention of the policy of economy enshrined in CR 1. See King, 146 Wn.2d at 426; Lybbert, 141 Wn.2d at 39.

The trial court properly declined to entertain the third and fourth amended complaints filed in violation of CR 15.

B

VS argues the trial court erred in denying leave to amend after dismissing its fourth amended complaint because the trial court did not give justification and justice required leave.

Under CR 15(a), " 'leave shall be freely given when justice so requires' " unless " 'prejudice to the opposing party would result.' " Herron, 108 Wn.2d at 165

---

[5] On at least one occasion, Level continued the hearing, and VS filed another amended complaint without leave before the continued hearing date.

(quoting CR 15(a); <u>Caruso</u>, 100 Wn.2d at 349). "In all cases, 'the touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party.' " <u>Id.</u> at 166 (quoting <u>Del Guzzi</u>, 105 Wn.2d at 888).

In determining prejudice to the nonmoving party, the factors a court may consider include undue delay, unfair surprise, jury confusion, introduction of remote issues, a lengthy trial, timing of the motion to amend, and whether the claims could have been introduced in the original complaint. <u>Id.</u> at 165-66. However, a trial court is not limited to the above factors in determining whether to grant leave. <u>See id.</u> at 166. CR 1 provides that "[these rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Thus, a court may also consider what expenses the non-moving party would incur if the moving party were granted leave to amend. <u>See id.</u> (leaving open for consideration how litigation expense may prejudice a party).

Here, the trial court had a tenable basis to conclude that allowing VS to amend by leave of court would cause prejudice to Level. VS argues leave to amend would not prejudice Level because no responsive pleadings had been filed, and it would not cause surprise or delay. In denying VS's first motion for leave to amend, the court noted, "There was no explanation in the motion as to <u>what</u> amendment was being sought or the difference between the 4th amended complaint and prior complaints." With that background, VS did not show in its second motion for leave to amend why leave would not prejudice Level when it would amend to what would ostensibly be the same claims it repeated in its

11

previous complaints, and it did not apparently address the grounds for dismissal Level had presented.

At the October 11, 2024, hearing, the court noted that it did not want to make any rulings on VS's motion to strike or Level's motion to dismiss before determining which complaint was operative because "it would make the record even more confusing." VS does not argue leave to amend would provide clarity on this record such that it would be appropriate to require Level to respond to the amended complaint or move anew to dismiss VS's claims. Months into the case, after motion practice and confusion over which allegations were required to be responded to, granting VS leave to amend would unfairly cause Level to incur more fees to respond to VS's potential amended complaint.

The trial court did not abuse its discretion in rejecting VS's third and fourth complaints and denying VS's leave to amend.

III

The parties dispute what materials the trial court should have considered when dismissing VS's claims.

VS argues the trial court erred in denying its motion to strike the bankruptcy schedules in Level's motion to dismiss. Level argues, under a theory of judicial estoppel, that VS Investment's failure to disclose claims against it in VS Investment's prior bankruptcy action bars VS from asserting claims against it now.[6]

---

[6] Level argues we should also take judicial notice of VS Investment's prior bankruptcy case, receivership, and appeal before this court because it would be inequitable to allow VS to take inconsistent positions regarding its loan obligations. VS argues judicial notice of records from those proceedings is inconsistent with Swak v. Dep't of Lab. & Indus., 40 Wn.2d 51, 240 P.2d 560 (1952). Because we

" 'Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.' " Ingram v. Thompson, 141 Wn. App. 287, 290-91, 169 P.3d 832 (2007) (quoting Cunningham v. Reliable Concrete Pumping Inc., 126 Wn. App. 222, 224-25, 108 P.3d 147 (2005)). "In determining whether judicial estoppel applies, we look to see if (1) the party asserts a position inconsistent with one made in an earlier proceeding, (2) acceptance of the position would create the perception that a party misled a court in either proceeding, and (3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment." Cent. Puget Sound Reg'l Transit Auth. v. LMRK PROPCO 3 LLC, 29 Wn. App. 2d 121, 131, 540 P.3d 141 (2023).

" 'While the doctrine of judicial estoppel serves the important purpose of preventing manipulative parties from prevailing twice on opposite theories in certain circumstances, it may not be used to hamstring a litigant from advancing a particular position when this position is not clearly inconsistent with a prior position.' " Ingram, 141 Wn. App. at 293 (quoting Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 528 (7th Cir. 1999)).

" 'Courts will generally apply judicial estoppel to debtors who fail to list a potential legal claim among their assets during the bankruptcy proceedings but then pursue the claim after the bankruptcy discharge.' " Chonah v. Coastal Vills.

---

conclude the trial court properly dismissed all but two of VS's claims and Level's judicial estoppel argument fails, we do not reach whether judicial notice of these records is appropriate under a CR 12(b)(6) motion.

13

Pollock, LLC, 5 Wn. App. 2d 139, 149, 425 P.3d 895 (2018) (quoting Skinner v. Holgate, 141 Wn. App. 840, 848, 173 P.3d 300 (2007)).  Either the bankruptcy court must have accepted the debtor's prior inconsistent position or the debtor's inconsistent position benefited the debtor.  Cunningham, 126 Wn. App. at 230-31.  Because the bankruptcy code and court rules require bankruptcy debtors to disclose contingent and unliquidated claims, " '[t]he failure to disclose a potential claim in bankruptcy is considered inconsistent with a later attempt to pursue such a claim outside the bankruptcy proceedings.' "  Chonah, 5 Wn. App. 2d at 149 (quoting Miller v. Campbell, 164 Wn.2d 529, 540, 192 P.3d 352 (2008)).

Here, VS's disclosure in its bankruptcy schedule of a "business loan" from Jacob Stelmakh to VS is not inconsistent as Level never shows either any details about this alleged loan nor its connection to the deed of trust encumbering the Stelmakhs' home that is the subject of the claims in this case.  Level asks the court to infer—improperly on its pleadings motion directed at VS's complaint—that the Stelmakhs had made an investment in the townhome project and executed the additional collateral agreement to protect that investment.  Level also fails to argue or show that the bankruptcy court accepted VS's position as disclosed in the bankruptcy schedules.  See Johnson v. Si-Cor Inc., 107 Wn. App. 902, 910, 29 P.3d 832 (2001) ("in and of itself, a bankruptcy debtor's failure to schedule an asset does not sufficiently involve the court so that the debtor's position becomes a position accepted by the court").  Therefore, Level's judicial estoppel argument

14

fails.[7]   Because we conclude that Level's claim of judicial estoppel fails, it is not necessary to reach whether the trial court erred in denying VS's motion to strike.

IV

VS argues the law of the case doctrine applies to bar dismissal because the trial court granted a preliminary injunction.  "Except in the case of jury instructions, the law of the case doctrine requires a prior appellate court decision in the same case."  In re Est. of Jones, 170 Wn. App. 594, 605, 287 P.3d 610 (2012).  Here, there is no prior appellate decision.  The law of the case "does not apply to identical issues raised repeatedly before the trial court."  Id.

V

VS argues the trial court erred in granting Level's CR 12(b)(6) motion to dismiss all its claims in the second amended complaint.[8]  We conclude the trial court erred in dismissing VS's breach of contract and CPA claims.

We review CR 12(b)(6) motions de novo.  Tavaglione v. Dehkhoda & Qadri, P.C., 34 Wn. App. 2d 515, 519, 568 P.3d 1158 (2025).  The purpose of a CR 12(b)(6) motion is to "determine if a plaintiff can prove any set of facts that would

---

[7] Even if judicial estoppel were to apply, Level does not show how judicial estoppel would bar the Stelmakhs' claims.  The bankruptcy schedules Level relies on list the debtor as VS Investment.  The schedules also list Valentin and Viktoriya Stelmakh as codebtors and make no mention of Jacob and Liliia Stelmakhs as debtors.  In as far as the Stelmakhs are mentioned, the schedules list Jacob "Stelmarkh" as a creditor.  Any claims VS Investment might be estoped from making because of the schedules would not estop the Stelmakhs who were not debtors in the bankruptcy action.

[8] While VS challenges the court's denying it leave to amend, neither VS nor Level challenges the trial court's determination that the second amended complaint is operative.  Therefore, we accept the trial court's ruling treating the second amended complaint as the operative complaint.

justify relief." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). " '[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support the plaintiff's claim.' " Jackson, 186 Wn. App at 843 (alteration in original) (quoting Bravo v. Dolsen Cos., 125 Wn.2d 745, 756, 888 P.2d 147 (1995)). "Under CR 12(b)(6), dismissal is appropriate only when it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, which would justify recovery." San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). "The complaint's legal conclusions are not required to be accepted on appeal." Jackson, 186 Wn. App. at 843. In principle, CR 12(b)(6) motions should be granted " 'sparingly and with care' and only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief." San Juan County, 160 Wn.2d at 164 (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)).

On a CR 12(b)(6) motion to dismiss for failure to state a claim, we accept the factual allegations contained in the complaint as true. Jackson, 186 Wn. App. at 843. The court may consider documents outside the pleadings "where a plaintiff asserts allegations in a complaint on specific documents but does not physically attach those documents." Id. at 844. The court may also take judicial notice of public documents if their authenticity cannot reasonably be disputed. Id.

Washington's notice pleading standard "merely requires a simple, concise statement of the claim and the relief sought." Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006).

16

A

VS argues it adequately pleaded that Level failed to disburse the funds it agreed it would and foreclosed on the Stelmakhs' home after failing to honor its agreement to an extended maturity date, thus breaching the additional collateral agreement.

"The purpose of contract interpretation is to ascertain the intent of the parties." Kelley v. Tonda, 198 Wn. App. 303, 311, 393 P.3d 824 (2017). "Washington courts 'follow the objective manifestation theory of contracts.' " Id. (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)). "Under this approach, '[w]hen interpreting an agreement, we focus on the agreement's objective manifestations to ascertain the parties' intent.' " Id. (alteration in original) (quoting Martin v. Smith, 192 Wn. App. 527, 532, 368 P.3d 227 (2016)). Washington courts will impute a reasonable meaning to the words used. Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 5, 277 P.3d 679 (2012). Washington courts also consider the "context surrounding an instrument's execution." Hearst Commc'ns, 154 Wn.2d at 502. If relevant for determining mutual intent, extrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties. Id. Any unjustified failure to perform when performance is due is a breach of contract that entitles the injured party to damages. Colo. Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 589, 167 P.3d 1125 (2007).

VS alleges Level breached the contract by failing to disburse additional funds and by failing to extend the maturity date for the loan. The additional collateral agreement between VS and Level provides, "Borrower and Jacob and Liliia Stelmakh each represent and acknowledge that Jacob and Liliia Stelmakh will benefit as a result of financial accommodations from Lender to Borrower." A reasonable interpretation of "financial accommodations" could be that Level agreed to give VS additional funds in exchange for securing a lien on the Stelmakhs' house. Moreover, an e-mail exchange with Level indicates that Level could have recognized the purpose of the additional collateral agreement was for it to increase the loan funds to cover permit expenses. The second amended complaint adequately states a claim that Level breached the additional collateral agreement because it agreed to provide additional funding for permits and to extend the loan, but did neither, damaging VS.

The trial court erred in dismissing the breach of contract claim.

B

VS adequately pleaded that Level's alleged violations in their private transaction may violate the CPA.

" 'The CPA prohibits [u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' " Clausen v. WBL SPO I, LLC, 35 Wn. App. 2d 604, 615, 577 P.3d 935 (2025) (alteration in original) (internal quotation marks omitted) (quoting Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834, 355 P.3d 1100 (2015)); RCW 31.04.025(1). "To succeed on a CPA cause of action, the plaintiff must establish the following elements: '(1) unfair

18

or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business property; (5) causation.' " Id. (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). Factors indicating a private dispute may impact the public interest include "(1) Were the alleged acts committed in the court of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" Hangman Ridge, 105 Wn.2d at 790-91.

Level argues VS cannot show the transaction impacts the public interest.[9] But, hypothetically under the CR 12(b)(6) standard, three out of the four public interest factors indicate this private transaction might impact the public interest. Level loaned VS the money to build townhomes as part of its business as a "residential construction financing" servicer. As part of Level's business model, it is possible Level advertises its lending services to the public, although solicitation to the public does not conclusively establish a public interest impact. Additionally, because Level was in a position to make further loan funds available but because VS faced the inability to proceed with the project and likely economic loss if Level

---

[9] Level also states that VS has not adequately pleaded the remaining Hangman Ridge elements but does not offer any argument or authority to show how VS's pleadings could not support a hypothetical situation that would meet the factors. "Without adequate, cogent argument and briefing," we decline to reach whether the other four elements could be met. Schmidt v. Cornerstone Invs., Inc., 115 Wn.2d 148, 160, 795 P.2d 1143 (1990); RAP 10.3(a)(6).

did not, VS adequately alleges that the parties occupied unequal bargaining positions.

The trial court erred in dismissing VS's CPA claim.

C

VS alleges Level violated the DTA by initiating the foreclosure sale without proof LCRE is a beneficiary who owns VS's obligation to pay back the loan secured by the Stelmakhs' home. VS also alleges Level violated "its duty of impartiality" under the DTA by having its counsel, H&W, serve as trustee in an "adversary proceeding." VS asserts this creates H&W's conflict of interest in the sale as a violation of its fiduciary duties. We disagree.

The DTA "creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale." Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012). The DTA requires trustees to have "proof that the beneficiary is the holder of any promissory note or other obligation" before initiating a trustee's sale by notice of default. RCW 61.24.030(7).

The DTA also provides, "[t]he trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4). "A trustee must 'adequately inform itself' about 'the purported beneficiary's right to foreclose, including, at a minimum, a cursory investigation to adhere to its duty of good faith.' " Villegas v. Nationstar Mortg., LLC, 8 Wn. App. 2d 878, 890, 444 P.3d 14 (2019) (internal quotation marks omitted) (quoting Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 787, 336 P.3d 1142 (2014)). Proof of knowledge that a

deed of trust has been recorded is sufficient to meet the duty of good faith. See Villegas, 8 Wn. App. 2d at 892 ("Finally, NWTS knew that the county auditor had recorded an assignment of the deed of trust on July 25, 2012, showing Nationstar as the beneficiary.").

VS does not adequately plead that H&W could have violated its duty of good faith. The notice of default lists the record number as 202007160110, which is the same record number on the recorded deed of trust to the Stelmakhs' home. It is not conceivable that H&W could apprise itself of the deed of trust's record number but not know the deed of trust was recorded.

VS also does not adequately plead a conflict of interest. "The trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust." RCW 61.24.010(3). "Where an actual conflict of interest arises, the person serving as trustee and beneficiary should prevent breach by transferring one role to another person." Cox v. Helenius, 103 Wn.2d 383, 390, 693 P.2d 683 (1985). The DTA is clear that the trustee does not owe a fiduciary duty to the grantor, and a lawyer serving as trustee for its client in a nonjudicial foreclosure does not operate inconsistently with the rules of professional conduct.[10]

The trial court did not err in dismissing VS's DTA claim.

---

[10] VS directs us to a Washington Bar Association ethics advisory opinion stating, "A lawyer cannot, consistent with the Rules of Professional Conduct, act as a fiduciary exercising discretion and as an advocate." WASH. BAR ASS'N, op. no. 926 (1986), https://ao.wsba.org/print.aspx?ID=37. Because the DTA does not impose a fiduciary duty on the lawyer with respect to the grantor, H&W, as Level's counsel, would not be acting as a fiduciary to Jacob and Liliia, the grantors, and as advocate for Level, the grantee.

21

D

VS argues Level violated the Washington Consumer Loan Act (CLA), chapter 31.04 RCW. The CLA requires businesses that provide certain loans to high-risk consumers to have the appropriate license under the statute. Clausen, 35 Wn. App. 2d at 610; RCW 31.04.025(1). "[L]oans made primarily for business purposes are exempt from CLA licensing requirements unless they are secured by a lien on the *borrower's* primary dwelling." Id. at 611.

For this loan, Level is exempt from CLA licensing requirements because the collateral was secured by a lien on the Stelmakhs' primary home. But VS Investment was the borrower, and Valentin and Viktoriya Stelmakh[11] are the governors or principals of VS Investment. Jacob and Liliia Stelmakh were the guarantors of this loan, and their address is different from that of Valentin and Viktoriya Stelmakh. VS admits the Stelmakhs "were not part of or privy to the original construction loan." Although the additional collateral agreement encumbered Jacob and Lillia Stelmakh's primary dwelling, because they are not the borrowers on the loan, the loan remains exempt from the CLA because it was for business purposes (as discussed in the next section).

The trial court did not err in dismissing VS's CLA claim.

E

VS alleges Level violated usury laws codified in chapter 19.52 RCW by securing a deed of trust on the Stelmakhs' home.

---

[11] Valentin and Viktoriya Stelmakh are in-law relatives of Jacob and Liliia Stelmakh.

Washington's usury statute prohibits charging consumers an interest rate over 12 percent per annum. RCW 19.52.020(1)(a). "General [and] . . . limited partnerships . . . and persons may not plead the defense of usury . . . if the transaction was primarily for agricultural, commercial, investment, or business purposes." RCW 19.52.080. This court recently held a principal of a limited liability company's (LLC) providing a personal guarantee for the LLC's loan "does not convert the transaction into a consumer loan as a matter of law." Clausen, 35 Wn. App. 2d at 616.

Here, VS Investment and Level agreed the loan was a "business loan transaction" and would not be used for "personal, family or household purposes." In the additional collateral agreement, VS "hereby restate[s] and reaffirm[s] each and every term, condition, covenant, representation, warranty, and obligation set forth in the Loan Documents." VS pleaded in its second amended complaint that the loan was for "the construction of ten single-family residential townhomes," and that VS intended to sell them. VS's pleadings establish conclusively that the loan was for business purposes and not for personal, family, or household purposes in order for the personal guarantee to be subject to the usury statute.

The trial court did not err in dismissing VS's usury claim.

F

VS alleges Level violated the HOEPA, and the TILA in offering credit to the Stelmakhs without providing appropriate disclosures.

Congress passed the HOEPA and found "economic stabilization would be enhanced and the competition among the various financial institutions and other

23

firms engaged in the extension of consumer credit would be strengthened by the informed use of credit." 15 U.S.C. § 1601. "The adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h). Two elements must be met to establish a " 'consumer credit' transaction: [1] the party to whom the credit is extended must be a natural person, and [2] the money, property, or services received by that person must be 'primarily for personal, family, household, or agricultural purposes.' " Am. Express Co. v. Koerner, 452 U.S. 233, 241, 101 S. Ct. 2281, 68 L. Ed. 2d 803 (1981) (discussing 15 U.S.C. § 1602(h)).

VS does not adequately plead that VS Investment or the Stelmakhs are consumers as conceived by the HOEPA and TILA. VS and Level agreed that "none of the proceeds of the Loan will be used for the personal, family or household purposes of Borrower, or principally or primarily for agricultural or grazing purposes." The additional collateral agreement, which the parties all signed, reaffirmed the purpose of the loan was business.

The trial court did not err in dismissing VS's HOEPA and TILA claims.

G

VS argues Level failed to provide necessary disclosures and charged excessive fees and interest rates to the Stelmakhs in violation of the ECOA.

The ECOA prohibits creditors from discriminating "against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . national

origin." 15 U.S.C. § 1691(a)(1). The ECOA and federal regulations define "applicant"[12] as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e); see 15 U.S.C. § 1691a(b).

In ECOA claims, federal courts have applied the Burdine/McDonnell Douglas[13] burden-shifting framework used in Title VII cases. Midkiff v. Adams County Reg'l Water Dist., 409 F.3d 758, 771 (6th Cir. 1984); Rosa v. Park W. Bank & Tr. Co., 214 F.3d 213, 215 (1st Cir. 2000). To establish a prima facie credit discrimination claim, the plaintiff can show: (1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for the credit; and (4) despite plaintiff's qualification, defendants denied the credit application. See Mays v. Buckeye Rural Elec. Coop., Inc., 277 F.3d 873, 877 (6th Cir. 2002) (applying the Burdine/McDonnell Douglas burden-shifting framework to plaintiff's claim she was denied credit because of her marital status). The burden then shifts to the creditor to prove a non-discriminatory reason for the denial. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (shifting the burden to the employer to show non-

---

[12] Level argues the Stelmakhs are not applicants under the ECOA. However, the Stelmakhs acted as third-party guarantors when they granted a deed of trust to Level to secure more funding for VS and extending the maturity date of VS's initial loan. By granting Level a deed of trust to further secure VS's loan, the Stelmakhs have become contractually liable regarding an extension of credit.

[13] Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

25

discriminatory reason for refusing to hire a candidate when the candidate established a prima facie racial discrimination claim). Then, the applicant may show that the creditor's reasons were "pretext" for the discrimination. See id.

However, VS's allegations do not support a situation where Level could have discriminated on the basis of race or national origin. Initially, VS does show the Stelmakhs likely are a protected class. VS's complaint identifies "Plaintiffs," VS Investment and the Stelmakhs, as "[b]orrowers and immigrants from Ukraine" with limited English proficiency. Limited English proficiency or heavily accented English are "inexplicably intertwined" with national origin, and courts are encouraged to take a "very searching look" to ensure discrimination based on accent is not pretext for national origin discrimination. Fragante v. City & County of Honolulu, 888 F.2d 591, 596 (9th Cir. 1989).

Nonetheless, VS's allegations establish a context in which Viktoria and Valentin Stelmakh engaged in a commercial townhome project, they were sophisticated builders in the local market, the original commercial loan was in English—and VS's current complaint takes no issue with that fact—and then Viktoria and Valentin worked with Jacob and Liliia in connection with the additional collateral agreement. In this context, VS's allegations do not support a situation where the additional collateral agreement being in English was a pretext for national origin discrimination. Neither does VS make any allegations that Level charged the Stelmakhs higher fees and interest rates because of their Ukrainian nationality, when VS does not allege Level charged VS Investment higher fees and

interest rates.  The allegations of the complaint do not support an inference that Level took any action because of any of the Stelmakhs' race or national origin.

The trial court did not err in dismissing VS's ECOA claim.

H

VS alleges Level was unjustly enriched as an alternate basis for relief.

Unjust enrichment is "generally available where a benefit was unjustly received and the law does not authorize or recognize a legal remedy to redress the harm."  Nwauzor v. Geo Grp., Inc., 2 Wn.3d 505, 525, 540 P.3d 93 (2023).  To establish an unjust enrichment claim, the plaintiff must show,

> "[1] a benefit conferred upon the defendant by the plaintiff; [2] an appreciation or knowledge by the defendant of the benefit; and [3] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."

Id. (alteration in original) (internal quotation marks omitted) (quoting Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008)).  " 'Unjust enrichment is a basis for recovering the value of a benefit conferred on another party in the absence of a contractual relationship.' "  Lavington v. Hillier, 22 Wn. App. 2d 134, 144, 510 P.3d 373 (2022) (emphasis omitted) (quoting Bircumshaw v. Wash. State, Health Care Auth., 194 Wn. App. 176, 205, 380 P.3d 524 (2016)).  "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Young, 164 Wn.2d at 484.

VS alleges Level received money because of its unfair and deceptive trade practices.  The original loan document and the additional collateral agreement

27

indicate VS would receive loan funds to build townhomes in exchange for Level securing the loan with the construction plot and the Stelmakhs' home. VS does not identify any money Level unjustly retained because without the agreements, Level, as a lender, would not be obligated to disburse any funds.

The trial court did not err in dismissing VS's unjust enrichment claim.

I

VS alleges it is entitled to test the accuracy of the amounts Level claims it owes through equitable accounting.

"The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962). To bring a claim for equitable accounting, "the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." Id. (quoting Kirby v. Lake Shore & Mich. S. R. Co., 120 U.S. 130, 134, 7 S. Ct. 430, 30 L. Ed. 569 (1887)).

VS disputes the amount Level says that VS owes and the "legality of the charges." VS fails to show it cannot seek remedies under the contract for amounts owing beyond what Level has disbursed. VS also fails to adequately allege a financial transaction of a "complicated nature" or a sum owing that cannot "be made certain by calculation." See Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179, 92 Cal. Rptr. 3d 696 (2009).

VS also seeks declaratory relief that Level violated the CLA and DTA to preclude Level from foreclosing on the Stelmakhs' home. Courts may declare "rights, status and other legal relations whether or not further relief is or could be claimed." RCW 7.24.010. "However, a claim for relief under the [Uniform Declaration Judgments Act, ch. 7.24 RCW] exists only if there is a 'justiciable controversy' or if the dispute pertains to 'issues of major public importance.'" Ames v. Pierce County, 194 Wn. App. 93, 114, 374 P.3d 228 (2016) (internal quotations omitted) (quoting League of Educ. Voters v. State, 176 Wn.2d 808, 816, 295 P.3d 743 (2013)). The plaintiff must establish four elements to show a justiciable controversy:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

Id. at 113 (alteration in original) (quoting League of Educ. Voters, 176 Wn.2d at 816). "If any one of these four elements is lacking, the court's opinion in this case would be merely advisory," and the claim would not be justiciable. Id. at 113-14.

Here, VS does not allege a basis for declaratory relief beyond claims that the transaction violated the DTA or CLA, claims which lack merit. Because there are not adequate allegations that the transaction violated the laws VS invokes, VS does not show a justiciable controversy.

Similarly, VS does not show its claims are a matter of public importance. Washington courts find a matter of public importance when the public's interest is

overwhelming. Id. at 116-17. Matters of public importance typically are cases involving standing for public office, elections, constitutionality of increasing excise taxes, and the State's duty to provide child welfare services. Id. at 117. VS and Level engaged in a private transaction, and VS does not argue the relief it seeks is a matter of public importance.

The trial court did not err in dismissing VS's declaratory relief request and equitable accounting claim.

VI

Level argues the trial court properly awarded Level and LCRE fees because the parties agreed VS would pay litigation fees in the original loan documents. The original loan agreement states,

> If any attorney is engaged by Lender to enforce or defend any provision of this Agreement, any of the other Loan Documents or as a consequence of any Default under the Loan Documents, with or without the filing of any legal action or proceeding, and including, without limitation, any fees and expenses incurred in any bankruptcy proceeding or in connection with any appeal of a lower court decision, then Borrower shall immediately pay to Lender, upon demand, the amount of all attorneys' fees and expenses and all costs incurred by Lender in connection therewith. In the event of legal proceedings, court costs and attorneys' fees shall be set by the court and not by jury and shall be included in any judgment obtained by Lender.

In the additional collateral agreement, Level and VS reaffirmed that obligation.

"In ordinary civil actions, a 'successful litigant may recover only such attorney fees as the statute or agreement of the parties provides.' "[14]  Gipson v.

---

[14] VS argues its claims are not based on the loan documents. "[A]n action is on a contract if the action arose out of the contract and if the contract is central to the dispute." Seattle First Nat'l Bank v. Wash. Ins. Guar. Ass'n, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991). VS's complaint would not have arisen but for the initial contract where Level loaned VS money for the townhome project.

Snohomish County, 194 Wn.2d 365, 376, 449 P.3d 1055 (2019) (quoting State ex rel. Macri v. City of Bremerton, 8 Wn.2d 93, 102, 111 P.2d 612 (1941)). Because we reverse the order dismissing VS's breach of contract and CPA claims against Level, it is no longer clear that Level is the substantially prevailing party, and the parties have not addressed the possibility of segregating the claims for purposes of a fee award. We reverse the order awarding fees to Level.

Additionally, we review an award of attorney fees for abuse of discretion. Berryman v. Metcalf, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013). "Discretion is abused when the trial court exercises it on untenable grounds or for untenable reasons." Id. at 657. "Trial courts may award attorney fees when authorized 'by contract, statute, or a recognized ground in equity.' " Id. at 656 (quoting Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc., 159 Wn.2d 292, 297, 149 P.3d 666 (2006)).

In awarding attorney fees, courts "should be guided in calculating fee awards by the lodestar method," which "affords trial courts a clear and simple formula for deciding the reasonableness of attorney fees." Mahler v. Szucs, 135 Wn.2d 398, 433, 957 P.2d 632 (1998) (footnote omitted) (citation omitted). This method "gives appellate courts a clear record" to determine if the trial court appropriately awarded fees. Id. The trial court must make findings of fact and conclusions of law to establish the appropriate record for review. Id. at 435.

The judgment does not include any findings of fact and conclusions of law to support the reasonableness of the attorney fees awarded to Level or LCRE on its successful dismissal. The trial court awarded $96,836.84, which is equal to the

combined total amount Level asked for: $94,018.00 in fees and $2,818.84 in costs. Trial courts may not solely rely on the party's billing records. <u>Mayer v. City of Seattle</u>, 102 Wn. App. 66, 79, 10 P.3d 408 (2000).

The absence of required findings of fact and conclusions of law in assessing the reasonableness of the award independently requires reversal of the fee award. In subsequent proceedings the trial court may revisit an award of reasonable fees to any prevailing party as appropriate.

VII

Both parties request attorney fees on appeal, both requests are denied. We reverse the order dismissing VS's breach of contract and CPA claims and award of fees, and remand for further proceedings.

Otherwise, we affirm.

_Birk, J._

WE CONCUR:

_Chung, J._